UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
                                                                      :
N. A. P.P.,                                                           :
                                                                      :
                                  Petitioner,                        :
                                                                      :
          -v-                                                         :        26-CV-3387 (NRM)
                                                                      :        **ORDER GRANTING**
MARKWAYNE MULLIN, *in his official capacity*     :        **PETITION FOR WRIT**
*as Secretary, U.S. Department of Homeland*         :        **OF HABEAS CORPUS**
*Security*; JUDITH ALMODOVAR, *in her official*      :
*capacity as Acting Field Office Director, New York* :
*City Field Office, U.S. Immigration and Customs*    :
*Enforcement*; TODD BLANCHE, *in his official*        :
*capacity as Acting Attorney General, U.S.*            :
*Department of Justice*; and RAUL MALDONADO   :
JR., *in his official capacity as the Metropolitan*     :
*Detention Center Warden*,                              :
                                  Respondents.        :
                                                                      :
----------------------------------------------------------------------X

**NINA R. MORRISON**, United States District Judge:

Petitioner N.A. P.P.[1] is a national of Guatemala who has resided in the New

York since approximately 2013. On April 2, 2026, Petitioner was detained by

Immigration and Customs Enforcement ("ICE") after ICE officers observed that he

"match[ed] the description" of another individual ICE was seeking. Resp. to Order to

Show Cause ("Resp.") 1, ECF No. 8. Officers approached Petitioner and "asked [him]

for his name and examined his appearance." *Id.* Respondents aver that Petitioner

"attempted to flee," *id.*, while Petitioner avers that he "tried to avoid the [ICE officer

who approached him] and started walking around the side of his employer's house to

---

[1] The Court previously granted Petitioner's motion to proceed by a pseudonym.
Dkt. Order dated June 5, 2026.

1

get away from him," Pet. for Writ of Habeas Corpus ("Pet.") ¶ 32, ECF No. 1. Petitioner further avers that he was caught and violently arrested by ICE, which Petitioner alleges included one officer knocking him to the ground, other officers forcing his arms over his head and shackling his wrists, and an officer "kne[lling] on the back of his head, shoving his head and face onto a rock on the ground." Pet. ¶ 32–33. He was afterwards transferred to the Metropolitan Detention Center ("MDC") in Brooklyn, New York, where he has been continuously detained for over two months.

On June 5, Petitioner filed a Petition for a Writ of Habeas Corpus, *see generally* Pet., alleging that his detention violates his constitutional and statutory rights, and seeking entry of an order directing his immediate release from detention.

The case was assigned to the undersigned the same day, at which time the Court issued an Order, ECF No. 5, directing Respondents to file, by 5:00 PM on June 8, 2026, a submission, *inter alia*, (1) providing certain information about Petitioner and his circumstances; (2) indicating the statutory provision under which they assert the authority to detain Petitioner; (3) addressing whether there is any basis to distinguish the asserted grounds for detention from the Second Circuit's decision in *Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), if Respondents assert the authority to detain Petitioner pursuant to 8 U.S.C. § 1225(b)(2); and (4) addressing whether Petitioner's case is distinguishable from the decision of this Court in *H.A.C.F. v. Francis*, No. 26-CV-00872 (NRM), 2026 WL 482607 (E.D.N.Y. Feb. 20, 2026), if Respondents assert the authority to detain Petitioner pursuant to 8 U.S.C. § 1226(a).

The Court further directed that, if Respondents asserted no basis to

2

distinguish this Petition from the Second Circuit's analysis in *Cunha* or this Court's decision in *H.A.C.F.*, the submission could take the form of a letter so stating, and indicating whether Respondents continue to oppose issuance of the writ. Finally, the Court's June 5, 2026 Order directed Respondents, in the event they took the position that this case is distinguishable from *Cunha* or *H.A.C.F.*, to respond to the Petition and to show cause as to why it should not be granted on or before June 9, 2026 at 5:00 PM; to further affirm that they have provided the Court with all facts material to Petitioner's claims and Respondents' opposition to those claims; and to attach all exhibits related to those three facts.

Respondents filed their initial submission at 5:49 PM on June 8, 2026, indicating that, as in *Cunha*, Petitioner was detained under the mandatory detention provisions of 8 U.S.C. § 1225(b)(2)(A) at the time of his detention. Resp. at 2. Respondents specifically assert that "Petitioner was *previously* detained pursuant to [§ 1225(b)(2)(A)] *until* the Second Circuit issued its decision in *Barbosa da Cunha* on April 28, 2026." *Id.* at 2. Now, however, Respondents assert that, that in the wake of the Second Circuit's decision in *Cunha*, "Petitioner was *thereafter* detained pursuant to § 1225(a)." *Id.* at 2 (emphasis added).

As the Second Circuit made clear in *Cunha*, because Petitioner has been living continuously in the United States and is not "seeking admission" into the country, his "detention is governed by Section 1226 and [] he is entitled to a bond hearing." *Cunha*, 175 F.4th at 71. However, Respondents have not alleged that they have provided Petitioner with a *pre*-detention bond hearing before a neutral magistrate,

3

which this Court found in *H.A.C.F.* and *Hyppolite v. Noem*, 808 F. Supp. 3d 474 (E.D.N.Y. 2025), is required for persons similarly situated to Petitioner. "Specifically, § 1226(a)'s implementing regulations require an individualized determination as to whether the detention of a noncitizen is appropriate after considering whether the noncitizen (1) is a 'danger to property or persons' and (2) is 'likely to appear for any future proceeding.'" *Hyppolite*, 2025 WL 2829511, at *13 (quoting 8 C.F.R. § 1236.1(c)(8)); *see also Artiga v. Genalo*, No. 25 CV 5208 (OEM), 2025 WL 2829434, at *8–9 (E.D.N.Y. Oct. 5, 2025); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 493–95 (S.D.N.Y. Aug. 13, 2025); *Salcedo Aceros v. Kaiser*, No. 25 CV 06924 (EMC), 2025 WL 2637503, at *12 (N.D. Cal. Sep. 12, 2025); *cf. Cunha*, 2026 WL 1146044, at *22 n.11 (noting that "Section 1226(a) requires" "an initial bond determination"). Accordingly, as it did in *Hyppolite* and *H.A.C.F.*, the Court finds that Petitioner has established that his detention violates his Fifth Amendment right to procedural due process, because Petitioner has resided in the United States since at least 2013 and is therefore entitled to a pre-detention bond hearing under the Immigration and Nationality Act, 8 U.S.C. § 1226(a). *See Hyppolite*, 808 F. Supp. 3d 490–95.

Respondents argue that detention here was and is lawful under § 1226(a) because they offered to provide Petitioner with a *post*-deprivation "custody redetermination hearing" at which Petitioner could seek his release from custody, which Petitioner initially accepted before subsequently withdrawing his hearing request. Resp. at 2. However, this Court in *Hyppolite* found that § 1226(a) and the Due Process Clause requires that noncitizens be given notice and a bond hearing *prior*

to, or contemporaneously with, their detention. *See Hyppolite*, 808 F. Supp. 3d at 491–95. Given that neither the Second Circuit nor the United States Supreme Court has yet to address this precise question, the Court adheres to the reasoning of its earlier decision and the conclusion reached by many other courts in this circuit. *See, e.g., Chipantiza-Sisalema v. Francis*, No. 25-CV-5528 (AT), 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025) (holding that a "custody redetermination hearing" is "no substitute for the requirement that ICE engage in a 'deliberative process prior to, or contemporaneous with,' the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause" (internal quotation omitted)); *Tumba v. Francis*, 813 F.Supp.3d 394, 406 (S.D.N.Y. 2025) (noting that "the Government's violation of Petitioner's constitutional rights originated with her detention in the first instance," and that "a [post-deprivation] bond hearing could not cure that constitutional violation"); *Rodriguez-Acurio v. Almodovar*, 811 F.Supp.3d 274, 318 (E.D.N.Y. 2025); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 494–95 (S.D.N.Y. 2025); *Singh v. Maldonado*, No. 26-CV-00019 (OEM), 2026 WL 233216, at *8–10 (E.D.N.Y. Jan. 29, 2026); *O.F.B. v. Maldonado*, 810 F.Supp.3d 394, 405 (E.D.N.Y. 2025); *Sidqui v. Almodovar*, No. 25-CV-9349 (VSB), 2026 WL 251929, at *17 (S.D.N.Y. Jan. 30, 2026). The Court hereby incorporates by reference its earlier analysis of these issues in *Hyppolite* and *H.A.C.F.*

The Court also specifically notes that Respondents initially asserted that Petitioner was detained pursuant to § 1225(b)(2)(A), but only until the Second Circuit issued its decision in *Cunha* in late April 2026. It was only after this petition was

5

filed in June that Respondents claimed that they began to detain Petitioner pursuant to a different provision, § 1226, Resp. at 2–3. That amounts to an impermissible *post hoc* rationalization of Respondents' unlawful detention of Petitioner. As another court in this district recently stated in a factually similar case, "an executive agency, like ICE, is bound by the bases it used to justify its decision—here the arrest and detention—in the first instance, not reasons it comes up with afterwards." *Inestroza Carbajal v. Frazier*, No. 26-CV-2778 (SJB), 2026 WL 1309265, at *1 (E.D.N.Y. May 12, 2026) (collecting cases). Like the respondents in *Inestroza Carbajal*, Respondents here "simply gloss over their change in legal justification, providing no case or examples to explain why an agency's decision to find other bases for arrest and detention—ones not used at the outset—is permissible." *Id.* This is improper. Petitioner's detention, which Respondents concede was pursuant to § 1225(b)(2)(A) at the time of he was taken into custody, was unlawful then and remains unlawful now. *See id.* ("That arrest and detention was illegal when it was initiated. . . . [A]ccording to Respondents, what began and continued as an illegal detention, became legal because they have found a difference source of legal authority."); *Tumba*, 813 F. Supp. 3d at 402 ("A noncitizen cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226, so if Petitioner was detained pursuant to one provision, [he] cannot be subject to the other." (citation modified) (citation omitted)).

Finally, the Court has also weighed the factors under *Mathews v. Eldridge*, 424 U.S. 319 (1976), which sets forth the test that courts in the Second Circuit will apply

when determining "the adequacy of process in the context of civil immigration confinement." *Munoz Materano v. Artera*, No. 25-CV-6137, 2025 WL 2630826, at \*12 (S.D.N.Y., Sep. 12, 2025). Having considered (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail, *see Mathews*, 424 U.S. at 335, the Court finds that the balance of interests weighs heavily in Petitioner's favor, and that granting the writ is an appropriate remedy for the deprivation of his right to procedural due process.

It is hereby:

**ORDERED**, that the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 is **GRANTED**. It is further **ORDERED** that Respondents must release Petitioner from custody **no later than 2:00 PM on June 10, 2026.**

In light of the fact that Petitioner is presently being held at MDC in Brooklyn, New York, it is further **ORDERED** that **counsel for Respondents shall keep Petitioner's counsel informed regarding the timing, location, and manner of Petitioner's release from custody**, so that counsel may be present or arrange to have a family member or other representative present at the time of Petitioner's release.

Respondents, through counsel, **shall file a letter on the docket no later than 5:00 PM on the same date (June 10, 2026)**, confirming that Petitioner has been released from custody.

7

**IT IS FURTHER ORDERED** that Respondents are **ENJOINED** from re-detaining Petitioner, absent prior authorization of this Court and without notice and an opportunity to be heard at a pre-deprivation bond hearing, at which Respondents will bear the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a).

The Court's earlier order scheduling a hearing for June 12, 2026 is hereby vacated in light of the Court's resolution of the merits of the petition. Petitioner's counsel may submit an application for attorney's fees and costs under the Equal Access to Justice Act within the time provided by the Local Rules.

**SO ORDERED.**

Dated: June 10, 2026             _/s/ Nina R. Morrison_
       Brooklyn, New York         Nina R. Morrison
                                      United States District Judge